## BRANCH *v.* KLATT.

1. NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—THEATERS.

A person may presume that the owner of a theater has discharged his duty of having the premises and exits in a reasonably safe condition as to lights and construction, so that patrons may safely pass through a darkened passageway or exit in leaving the theater.

2. SAME—THEATERS AND SHOWS—EXITS.

Whether, in passing over a series of irregular flights of stairs

leading from a five-cent theater, a patron who fell down an unexpected step in the dark, was guilty of contributory negligence, should have been submitted to the jury.

3. SAME—STAIRWAYS.
   The duty of such person to exercise care is lighter than that of a pedestrian on the public highway.

Error to Wayne; Murfin, J. Submitted April 13, 1911. (Docket No. 105.) Decided May 8, 1911.

Case by Theresa Branch against William F. Klatt for personal injuries. A judgment for defendant on a verdict directed by the court is reviewed by plaintiff on writ of error. Reversed.

*Patrick J. Kelaher* (*McHugh & Gallagher*, of counsel), for appellant.

*Luman W. Goodenough*, for appellee.

STONE, J. This is an action on the case to recover damages by reason of the alleged negligence of the defendant in failing to provide a safe entrance and exit to and from his theater, in not equipping the stairways with railings, and in not keeping the stairways lighted sufficiently, and in not otherwise, by signs or by attendants, apprising the plaintiff of the location of the various steps and stairways leading into the theater.

On October 21, 1909, the defendant maintained a five-cent moving picture theater, so called, known as the Bijou Theater, on the second floor of a building on Monroe avenue, in the city of Detroit. The theater was reached by entering the ground floor of the building on Monroe avenue, and then passing to the rear, where the stairway was situated.

The stairway consisted of several flights of steps, as shown by the annexed diagram, the entrance being at X. The first flight was distant seven feet from the southerly wall of the building, and consisted of eight steps. There was a platform at the head of this flight. At right

angles to the first flight, and directly along the easterly wall of the building, there was a second flight of three steps, also ending in a platform which was set in the southeastern corner of the building. Parallel with the first flight, and at right angles with the second, a third flight of eight steps was erected along the south wall

of the building, which brought one to the level of the second floor, at C. The stage of the building was at the west end, so that the stairway brought one in at the rear of the theater. There was a single aisle through the theater, in the center of the building, which, with the seats, on either side, inclined up from the level of the stage. The last row of seats was thereby left considerably above the level of the floor of the building, and made necessary four addi-

tional steps after reaching the top of the third flight of stairs already mentioned. From the top of said third flight of stairs to the last row of seats is a distance of upwards of eight feet. Extending from a point a few inches north from the top step of said last flight to a point on the south wall, about five feet distant from the top of said third flight of steps, there is a single curved step (A, B,) and beyond this step another platform extending northerly entirely across the building, and also extending westerly to the last row of seats. From this platform to the aisle of the theater there is a flight of three steps (M, N, O), the base of which is distant from said single curved step at the nearest point about two feet. At the time of the injury of the plaintiff there was no railing down this flight of three steps, nor over the single step.

At about 4 o'clock p. m. of the day named, the plaintiff visited this theater, bought a ticket and went up the stairway, reaching the seat without incident, and without paying any particular attention as to how the steps were constructed or arranged. The performance was a continuous one, and she remained until she had seen all of the acts, and then started to leave. People had been leaving all of the time during the performance, though none did so while she was going out. When plaintiff started to descend the flight of three steps (M, N, O), the upstairs of the theater was very dark. She could not see the steps, and had to feel her way down. It was light on the ground floor of the building, and from this light the plaintiff could see where the stairway went, but above that could see nothing. After she felt her way down the flight of three steps, she started to walk toward the platform, and stepped down the single curved step (A, B) without being aware of its existence there, whereupon she lost her balance, and fell forward and down the flight of eight steps leading downstairs, thereby sustaining the injuries complained of.

The plaintiff had been in the theater once before. She testified that "it was a long time before that." She fell

against the side wall when she stepped off the single step, and tried to catch hold of something, but there was nothing there to get hold of. Plaintiff's eyesight was good. She had no parcels in her arms, and was not incumbered in any way. Further witnesses were sworn to prove the damages of the plaintiff. After the plaintiff rested, upon the motion of defendant, the trial judge directed a verdict and judgment to be entered for the defendant upon the ground that plaintiff was guilty of contributory negligence as matter of law. In directing the verdict the trial judge said:

"She should either have asked for assistance, or called for a light, or something. I do not believe, gentlemen of the jury, as matter of law, that any careful and prudent person exercising good, sound, common sense in the ordinary care that is expected of any pedestrian or anybody else under the same circumstances would go through a strange hallway, with knowledge of these steps there, at a time when it was so dark that it was just as dark ( as the testimony shows in this case ) as it could possibly be, and I think * * * that anybody that does that must be held, as a matter of law, to be guilty of contributory negligence, and therefore, gentlemen, even though there be a *prima facie* showing of negligence on the the part of the defendant company, the testimony being undisputed that the plaintiff herself was guilty of negligence which contributed to the injury, I think it my duty to direct you to render a verdict of no cause of action."

The plaintiff has brought the case here, and has assigned error upon the action of the trial court in directing the verdict and judgment for defendant.

The single question is presented, whether the plaintiff can be said, as matter of law, to have been guilty of contributory negligence. How would a person in the exercise of ordinary prudence conduct himself if placed in the plaintiff's situation at the time of the injury ? One would have a right to presume that the defendant had discharged his duty of having the premises in a reasonably safe condition, as to lights and construction; and the ordinary person would naturally suppose that it would be safe to

pass along a passageway provided for his exit, with reasonable assurance of its being in safe condition. The very fact of the premises being maintained in a darkened condition might give him added assurance of its being reasonably safe.

This was a place where the public were invited. Can it be said, as a matter of law, that a person seeking to leave a public theater, and following the only path leading to an exit, should apprehend that that path contained an unsafe place or a pitfall, or the like, and yet such was claimed to be the condition of the plaintiff's only path of egress at the time in question, as appears from her testimony. We think, to say the least, that, under the evidence, this question was one for the jury under proper instructions, and that the trial court erred in directing a verdict for the defendant. *Dundas* v. *City of Lansing*, 75 Mich. 499 (42 N. W. 1011, 5 L. R. A. 143, 13 Am. St. Rep. 457); *Brezee* v. *Powers*, 80 Mich. 172 (45 N. W. 130); *Graves* v. *City of Battle Creek*, 95 Mich. 266 (54 N. W. 757, 19 L. R. A. 641, 35 Am. St. Rep. 561); *Cousineau* v. *Lighting Co.*, 145 Mich. 314 (108 N. W. 720); *Williams* v. *Park Association*, 128 Iowa, 32 (102 N. W. 783, 1 L. R. A. [N. S.] 427, 111 Am. St. Rep. 184, 5 Am. & Eng. Ann. Cas. 924, and note); *Bloomer* v. *Snellenburg*, 221 Pa. 25 (69 Atl. 1124, 21 L. R. A. [N. S.] 464). The last-cited case holds that in a building where the public are invited it is not reasonable to expect that the same degree of attention on the part of the plaintiff should be bestowed upon the placing of the feet as would properly be required outside, upon a public highway.

The duty of a person in a theater, where he has been invited, is lighter than that resting upon one passing along the public streets.

The judgment of the circuit court is reversed, and a new trial granted.

OSTRANDER, C. J., and BIRD, HOOKER, and BLAIR, JJ., concurred.