Russell E. DEAN, Appellant,

v.

SAFEWAY STORES, Inc., a Corporation, and Virgil Cochran, Respondents.

No. 45477.

Supreme Court of Missouri,

Division No. 2.

March 11, 1957.

Motion for Rehearing or to Transfer to Court en Banc Denied April 8, 1957.

Lyman Field, Rogers, Field, Gentry & Jackson, Kansas City, for appellant.

J. D. James, T. A. Sweeny, Hogsett, Houts, James, Randall & Hogsett, Kansas City, for respondents.

BARRETT, Commissioner.

Russell Dean claimed that he sustained serious personal injuries on October 29, 1953, when he fell on the parking lot maintained by Safeway Stores in North Kansas City. In this action against the store and its manager, Virgil Cochran, to recover $75,000 damages a jury returned a verdict for $40,000. The trial court was of the view, however, that the defendants' motions for a directed verdict should have been sustained and accordingly set the verdict aside and entered judgment for the defendants. V.A.M.S., Secs. 510.280, 510.290. In the alternative the trial court sustained the defendants' motion for a new trial on seven specified grounds, several of which the appellant Dean concedes to have been discretionary. Thus the single question upon this appeal is whether the issue of the defendants' negligence should have been submitted to the jury or whether it should have been declared as a matter of law that there was no evidentiary basis for the inference of negligence and hence no liability on the part of the defendants for the plaintiff's fall and injuries.

In his petition the plaintiff alleged that he parked his automobile on the parking lot, entered the store and purchased a quantity of groceries, and in the course of returning to his automobile "was caused to trip over a certain large metal hoop." He alleged that the defendants were negligent in three specific respects: (1) after having undertaken to do so, failed to exercise due care to maintain the parking lot in a reasonably safe condition for use by customers; (2) knew or should have known of the presence of the hoop in time to have removed it or warned of its danger; and (3) knew or should have known that it was dark and the parking lot "was not sufficiently illuminated" so that customers could see objects on the parking lot, including the wire hoop, and having assumed the obligation to do so failed to turn on the lights on the parking lot. It is obvious from the petition that the plaintiff relies upon the breach of the duty owed by the owner of premises to his business invitee. 2 Restatement, Torts, Sec. 343; Devine v. Kroger Grocery & Baking Co., 349 Mo. 621, 162 S.W.2d 813, and the cases and annotations there noted. Despite the recent critical analysis and examination of the essence of the rule as declared and set forth in the Restatement, by distinguished experts in the field of tort law (2 Harper & James, Law of Torts, Secs. 27.12–27.13; Keeton, "Personal Injuries Resulting From Open And Obvious Conditions," 100 Pa.L.R. 629), the doctrine together with all of its technicalities is firmly embedded in the jurisprudence of this jurisdiction, for the time being, and the problem is whether the facts and circumstances of this occurrence reasonably fit into the pattern of the rule as it has been established in Missouri.

The plaintiff parked his automobile on the parking lot about 5:45 o'clock and at that time his wife said "it was dusky dark." His car lights were on but the lights on the parking lot had not been turned on. He was in the store approximately fifteen minutes and was returning to his automobile carrying two sacks of groceries and a sack of eggs and as he walked around the end of another parked automobile "something tripped him" and he fell scattering the groceries over the lot. As he sat on the parking lot, about to get up, he observed, for the first time, an object hanging on his trouser leg or shoe and picked it up and preserved it. His wife assisted in picking up the groceries and as they drove off of the unlighted parking lot the lights were turned on. The next day Dean and his wife reported the incident to the manager and he said, "the boys either neglected to turn them (the lights) on or hadn't gotten around to it yet." It turned out that the fifteen-inch hoop was a wire handle from a banana crate. The plaintiff was unable to show, however, where the handle came from, how it got on the parking lot, how long it had been there, or that anyone connected with the Safeway Store had either caused it to be there or knew of its presence.

Now, it is the plaintiff's theory that the defendants' negligence "consisted in their failure to turn on the lights"; that "failure to illuminate the lot when it was dark was the proximate cause of plaintiff's fall thus obviating the necessity of proving any 'notice' with respect to the presence of the wire object which tripped plaintiff." On the other hand, the respondent contends that "negligence could not be based upon failure to light alone, because that condition was at least as obvious to plaintiff as to the defendants. The element that made the dark parking lot not reasonably safe was the metal piece" of which both parties were unaware. It is stated that liability has never been imposed for darkness alone; that "liability has been imposed *only* where some other condition *of which the owner had knowledge* combined with the lack of light to make for a dangerous condition." In conclusion the respondent urges that "it is not negligence for an invitor to fail to light, absent a showing of actual or constructive knowledge of some condition (unknown to the invitee) which renders the premises unsafe if not lighted."

As the respondents urge, in most, if not in all, of the cases some other condition or object combined with the lack or insufficiency of light to create the hazard; there was an open pit in a dark basement, a sudden right angle turn in a stairway, an unsafe entrance, a wooden curbing, or an unseen step-off. Annotation 14 A.L.R.2d 780, 784; Glaser v. Rothschild, 221 Mo. 180, 120 S.W. 1, 22 L.R.A.,N.S., 1045; Oakley v. Richards, 275 Mo. 266, 204 S.W. 505; McFarland v. Sears, Roebuck & Co., Mo.App., 91 S.W.2d 615; Feucht v. Parkview Amusement Co., Mo.App., 60 S.W.2d 663; Cannon v. S. S. Kresge Co., 233 Mo. App. 173, 116 S.W.2d 559. On the other hand, it is seldom that the object or condition alone creates the hazard; "It is not contended the presence of the step-off, alone, was negligence. It was the absence of light sufficient to enable respondent to see the depression which brought about her fall. The evidence was sufficient to warrant a finding of negligence." Oakley v.

Richards, supra [275 Mo. 266, 204 S.W. 506]. As a sole or independent act of negligence failure to illuminate has received but little attention in either the cases or the textbooks. It may be that it is impossible (and in this case unnecessary) to separate the failure to light from some other object, condition, or circumstance; however, as has been observed in connection with the liability of landlords, if the duty exists it is indeed difficult to distinguish between failure to light and failure in any other respect as the failure to exercise reasonable care. Annotation 25 A.L.R.2d 496, 498.

There have been but two cases in which any consideration was given to the problem of whether lack of light alone constituted a breach of the duty to exercise reasonable care. In one, a theater case, Grand-Morgan Theatre Co. v. Kearney, 8 Cir., 40 F.2d 235, 237, the plaintiff fell when he stepped on a crumpled or folded carpet on a raised step. It was held in that case that the trial court had erroneously submitted issues at variance with the pleadings and thereby deprived the defendant of its defense that the carpet was not crumpled or folded. Nevertheless, the court said, (by way of dictum, it is believed):

"We are satisfied the grounds of negligence that the court submitted do not alone constitute negligence, or are so broad and general as to permit the jury to mentally wander in the realm of speculation.

"Whether there was sufficient light, alone, or whether there were ushers, or a sufficient number of ushers in attendance, standing alone, would not constitute negligence. These might be contributing factors, or, under all the facts and circumstances, might be elements, together with other conditions, that might constitute negligence.

"The question here is not whether the theater was dark, nor whether there were ushers present to assist plaintiff to his seat, as these facts and circum-

stances were known alike to the defendant and the plaintiff, but whether the defendant had the premises in a reasonably safe and suitable condition to protect patrons against injury."

In the other case, Petera v. Railway Exchange Building, Mo.App., 42 S.W.2d 947, 950, an employee of a tenant in an office building fell when she stepped on a slippery substance as she walked down an unlighted corridor to her place of work in the morning. The defendant's liability was disjunctively submitted upon a finding of either the known presence of the slippery substance or failure to have had the corridor lighted. It was held that the jury might find negligence under either hypothesis, but as to the defendant's failure to have turned on the corridor lights Judge Bennick appropriately said:

"Similarly, if due care on the part of defendant required that the lights be burning at the time, as the evidence tends to show, if they had been turned off for a sufficient length of time that defendant might have learned of the fact, and have turned them on, all of which is to be inferred from the testimony, and if the insufficiency of the light caused plaintiff to step upon the soap, and to fall, then defendant might be held to respond in damages, irrespective of whether negligence is to be imputed to it by reason of the presence of the soap upon the floor."

The store manager conceded that it was the policy of the company and a part of his duty, representing the company, to maintain the parking lot in a reasonably safe condition. In safely maintaining the parking lot an adequate lighting system was provided; "It is lighted very well," and when the lights were turned on a person with normal vision "should" be able to see any object on the macadamized lot. Mr. Cochran denied that he had made the statement to Mrs. Dean that the boys had either neglected to turn the lights on or had not gotten around to it on October 29th. He did testify, repeatedly, that the lights were customarily "turned on before dusk." He had no independent recollection of the hour at which the lights were turned on on October 29, but he had "a feeling" that it would have been around five o'clock. Thus it would appear that the duty to illuminate the parking lot was conceded. And from the plaintiff's evidence the jury could find that it was "dusky dark" when the Deans entered upon the premises, that it was dark when Mr. Dean fell, and that, although customarily the lights would have been turned on at five o'clock, they were not turned on until six o'clock, a period of time in which the fact could or should have been discoverable, and, of course, in the circumstances that the defendants had breached their admitted duty. Petera v. Railway Exchange Bldg., supra.

Of course, Mr. Dean must have been aware of the fact that the lights had not ben turned on at "dusky dark" when he entered the parking lot and he must have again observed the fact when he left the store and walked towards his automobile in the dark. But it does not follow as a matter of law from what he must have observed that in returning to his automobile he was guilty of contributory negligence or that he possessed such knowledge as to completely absolve the defendants of liability. In some circumstances the absence of lights, or the presence of but little light, may be so usual or customary, as in certain moving picture theater cases, that, there being no other unusual feature, the invitee may be expected to take care of himself. Davidson v. Missouri Orpheum Corp., 236 Mo.App. 1025, 161 S.W.2d 707; Rogers v. Atlanta Enterprises, 89 Ga.App. 903, 81 S.E.2d 721; 2 Harper & James, Law of Torts, Sec. 27.13, p. 1490. Compare: Oakley v. Richards, supra. The fact that Dean had some knowledge of the darkened condition of the premises did not preclude his use of the parking lot entirely. Although he had some knowledge and should have had some apprehension of the hazard, it may not be said, in all the circumstances, that he "appreciated" the danger. 38 Am.Jur., Sec. 188, p. 864; Bart-

lett v. Taylor, 351 Mo. 1060, 1070, 174 S.W. 2d 844, 850. Then too, there was the handle from the banana crate of which neither the plaintiff nor the defendants had notice or knowledge. And while the presence of the handle may not have been an independent act of negligence it did create a hazard and a situation in which, even in known darkness, the invitee might reasonably expect one condition and was unexpectedly confronted with another. Summa v. Morgan Real Estate Co., 350 Mo. 205, 214, 165 S.W.2d 390, 394; 2 Harper & James, Law of Torts, Sec. 27.13, p. 1491. The plaintiff entered the store when it was "dusky dark" and if he was to return to his automobile it was necessary for him to retrace his steps across the unlighted parking lot; there was no alternative course unless he returned and informed the store that its lights had not been turned on, and certainly reasonable minds could well differ as to the reasonableness of his conduct in the circumstances. Evans v. Sears, Roebuck & Co., Mo.App., 104 S.W.2d 1035; Keeton, "Personal Injuries Resulting From Open And Obvious Conditions," 100 Pa.L.R. 629.

It should be carefully noted that we are not concerned here with the impressiveness of the plaintiff's case in any respect; any such questions were settled when the trial court alternatively granted a new trial. Neither are we concerned with whether in the trial of the case the plaintiff adhered to the theory now advanced either in the instructions offered or in his examination and cross-examination of witnesses. The only matter with which we are concerned is that the trial court has entered a judgment for the defendants, thereby indicating that the plaintiff did not make a submissible case under any theory. And it is our view, as indicated, that reasonable minds could differ, and the inferences of negligence and proximate cause were possible, permissible inferences and, together with the plaintiff's contributory negligence, were questions to be resolved by a jury. Petera v. Railway Exchange Bldg., supra; Oakley v. Richards, supra; Reinagel v. Walnuts Residence Co., 239 Mo.App. 701, 194 S.W.2d 229;

Feucht v. Parkview Amusement Co., supra; Stein v. Buckingham Realty Co., Mo.App., 60 S.W.2d 712; Barber v. Kellogg, Mo., 123 S.W.2d 100; annotation 14 A.L.R.2d 780, 794–797. Accordingly the judgment is reversed and the cause remanded.

BOHLING and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by BARRETT, C., is adopted as the opinion of the Court.

All concur.