Trimback *v.* McDonald, Appellant.

Argued March 26, 1954. Before HIRT, ROSS, GUN-THER, WRIGHT, WOODSIDE and ERVIN, JJ. (RHODES, P. J., absent).

*Robert Boyd, Jr.,* for appellant.

*Charles S. Shotz,* for appellees.

OPINION BY ROSS, J., September 28, 1954:

This action in trespass was brought by William and Virginia Trimback, husband and wife, against the former's aunt, Anna M. McDonald, for refund of overpayment of rent, treble damages, attorney's fees and costs under the Federal Housing and Rent Act of 1947, Act of June 30, 1947 as amended, c. 163, Title II, sec. 201; 61 Stat. 196 et seq: Title 50 (App.) USCA 1891 et

378

seq. The defendant counterclaimed for the value of property allegedly damaged or removed, as well as for unpaid rent and a balance which she claimed as due on a loan of $100 made to plaintiffs by her. The plaintiffs denied having made such loan.

After trial in the Municipal Court of Philadelphia County on April 23, 1952, a verdict was rendered for the plaintiffs in the sum of $388 in their suit, and for them as defendants in the counterclaim. Defendant's motion for new trial was dismissed by the court for want of prosecution and judgment entered on the verdict. Later, however, the judgment was stricken off and the motion for new trial reinstated. The court en banc, after consideration of the motion, dismissed it and again entered judgment. Thereafter, pursuant to stipulation of counsel, the court again struck off the judgment, reinstated defendant's motion for new trial and determined the case on submitted briefs, with the result that on March 11, 1953 the motion for new trial was again dismissed and judgment entered on the verdict. Defendant has appealed to this Court.

On September 8, 1949 plaintiffs rented a third-floor, furnished apartment from defendant under an oral agreement. They occupied the apartment until August 10, 1950, when defendant had them evicted as undesirable tenants. Their weekly rental was $10. Defendant did not immediately, at the beginning of plaintiff's tenancy, register with the Office of Price Administration, and it was not until August 9, 1950 (the day before plaintiffs removed from the premises) that she obtained a ruling by the OPA fixing the maximum rent at $10 weekly, retroactive to September 8, 1949. On December 19, 1950 the Area Rent Director issued his "final order" decreasing the rent from $10 to $8 a week, effective from September 8, 1949, and ordering that any excess collected over and above that rental

be refunded to the tenants within 30 days of the date of the order. The order also set forth a penalty of treble damages for violation thereof. Upon defendant's refusal to refund the excess, plaintiffs instituted the present action.

The OPA ruling of August 9, 1950 was tentative and, as such, of course, subject to revision. As stated by Mr. Justice JACKSON, speaking for the United States Supreme Court in *Woods v. Stone*, 333 U. S. 472, at page 475: "The plan therefore provides that, despite his failure to register, the landlord may continue to collect his unapproved price, but only on condition that it is subject to revision by the public authority and to a refund of anything then found to have been excessive." The final order of December 19, 1950 establishes the legality of the award to plaintiffs of $2 weekly, or a total of $96. It cannot successfully be contended on behalf of defendant that having waited 11 months to obtain a determination of the legal maximum rental for her apartment, she could procure a tentative order and then, after revision by the administrator, retain whatever she had collected in the meantime in excess of the maximum as fixed by the final OPA order.

The Price Control Extension Act, 50 USC (App.) sec. 1895 (a), after proscribing a penalty of treble damages for overcharge, provides further: "That the amount of such liquidated damages shall be the amount of the overcharge . . . if the defendant proves that the violation was neither wilful nor the result of failure to take practicable precautions against the occurrence of the violation."

By statute, then, defendant had the burden of proving a lack of wilfulness on her part with regard to the violation in order to escape the treble damage penalty. Since on appeal we view the testimony in the light most favorable to the party having the verdict and

resolve all doubts and conflicts therein in his favor (*Dandridge v. Exhibitors Service Co.,* 167 Pa. Superior Ct. 143, 74 A. 2d 670; *Henry v. Segal,* 174 Pa. Superior Ct. 313, 101 A. 2d 149), we should find that the verdict for plaintiffs establishes that defendant has not sustained her burden of proof and that she is, therefore, subject to payment of the penalty. However, as appears of record and as admitted by counsel at oral argument before us, the verdict was contrary to the instruction of the court.

With reference to this phase of the case the learned trial judge charged the jury: ". . . as a matter of law there has been no proof presented on behalf of the board or by the administration of the regulation of the price of this apartment; that the defendant herself was not in the rooming business, but had bought a house which she rented to a relative at an agreed price, and that *under the evidence as presented to you there is not the slightest justification for any such penalty or charge as is sought to be recovered here.*" (Italics supplied.) This in effect was a binding instruction to find for defendant against imposition of the penalty, which the jury by its verdict disregarded. We cannot say, from our examination of the record, that such instruction was capricious. Wilfulness, being a state of mind, is subjective. The learned court below in giving the instruction at the time must have considered that the evidence presented by plaintiffs to show wilfulness, either by defendant's failure to register (since it was a family arrangement), or by her refusal to return the excess upon their demand, in view of her counterclaim, constituted but a mere scintilla of evidence of wilfulness, and that a verdict awarding treble damages would have to be set aside.

An appellate court has the power to mould a verdict so as to express the amount of damages legally

due in lieu of requiring a new trial, and it is apposite that we do so in this case, which has been pending in the courts since January 1951. We, therefore, assess the damages due plaintiffs by defendant at $96, representing the actual overcharge for rent, plus $100 attorney's fees fixed by the court below and not questioned here.

Judgment to be entered in accordance with this opinion.